IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 12, 2003 Session

STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
RB, IN THE MATTER OF: REB, (D.O.B. 6/20/96) A Child Under Eighteen
Years of Age.

**Direct Appeal from the Juvenile Court for Carter County**
**No. J16615      Hon. John W. Walton, Judge**

**FILED JUNE 9, 2003**

**No. E2002-01950-COA-R3-CV**

Trial Court terminated father's parental rights for failure to support child.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Janice A. Russell, Mountain City, Tennessee, for Appellant.

Paul G. Summers, Attorney General, and Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for Appellee.

Mark Dugger, Elizabethton, Tennessee, Guardian Ad Litem for the minor child, REB.

**OPINION**

The Trial Court terminated appellant's parental rights to REB[1].  The issue on appeal, as stated by appellant is:

[1]The parental rights of the mother were also terminated in the proceeding, but she did not appeal.

Whether the Trial Court erred by relying on a statute that has been declared unconstitutional to terminate the parental rights of the appellant . . . .

Appellant has a history of DUI's and other motor offenses. His sixth conviction on DUI and other charges in January 2001 resulted in an effective 4 ½ year prison sentence. He has been incarcerated in the Tennessee Department of Corrections since March 14, 2000.

It is not disputed that appellant paid child support to his brother, during the 5-month period the brother had custody of the child, pursuant to a Court order. An Order entered on August 12, 1999, when DHS resumed custody, ordered appellant to pay child support of $45.26 per week through the Clerk's office, commencing August 13, 1999. He was employed at the time, but paid no further child support after DHS had custody of his son. Appellant conceded at the termination hearing that his case manager, told him he had to pay support. He testified that he went to the courthouse twice to make arrangements for payment and both times was told that "it wasn't on the computer." He admitted that he knew he had the obligation, but did not follow up on making payments.

Evidence established that since the child came into the custody of the State, he has serious behavioral and emotional problems, which increased after visitation with the appellant. The child had lived in at least six different homes before age 5, including foster homes over a 15-month period. Eventually he was placed in the TRACES program, where he has made progress. He is now with a foster family with whom he has assimilated well, and has bonded with his foster family.

At the conclusion of the evidentiary hearing, the Trial Court specifically found that appellant's testimony regarding his attempts to pay support was not credible. The Court found upon clear and convincing evidence, the parental rights of the appellant should be terminated for wilfully failing to support or make reasonable payments toward the support of the minor child after August 8, 1999.

The standard of review in a termination of parental rights cases is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *Tenn. Dept. of Human Services v. Riley,* 689 S.W.2d 164 (Tenn. Ct. App. 1984). The clear and convincing standard in termination cases is more than a "preponderance of the evidence" but less stringent than a "beyond reasonable doubt" standard. *O'Daniel v. Messier,* 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

The statutory grounds by which the court may terminate parental rights are listed in Tenn. Code Ann. § 36-1-113. Pursuant to Tenn. Code Ann. § 36-1-113(g)(1), a ground for termination of parental rights is a determination of abandonment which is defined in. § 102. Willful non-payment of child support or failure to make reasonable payments toward child support for four (4) consecutive months immediately preceding the filing of the petition to terminate rights, establishes a basis to sever the parents' relationship with the child. Tenn. Code Ann. § 36-1-102(1)(A). If the parent was incarcerated during all or part of the four-month pre-petition period, then the time runs from the four months prior to the parent's incarceration. Tenn. Code Ann. §36-1-102(1)(A)(iv).

The Supreme Court in *In re Swanson,* 2 S.W.3d 180 (Tenn. 1999) examined the Code's definitions of "abandonment," "willfully failed to support" and "willfully failed to make reasonable payments" toward support, and concluded that the definitions were unconstitutional because they effectively created an irrebuttable presumption that a mere failure to pay support constituted abandonment.

*Id.* at 188. As a consequence, *Swanson* elided subsection (D), holding that until the legislature provided otherwise, the definition of abandonment contained in the prior law would be the proper definition. Specifically, *Swanson* directed that the 1994 statute should be used. The 1994 version of Tenn. Code Ann. § 36-1-102 reads in relevant part:

> As used in this part, unless the context otherwise requires:
>
> (1)(A) "Abandoned child" means:
>
> (I) A child whose parents have willfully failed to visit or have willfully failed to support or make reasonable payments toward such child's support for four (4) consecutive months immediately preceding institution of an action or proceeding to declare the child to be an abandoned child. For purposes of this part, a father who has willfully failed to visit or willfully failed to support or make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child is deemed to have willfully failed to visit or willfully failed to support or make reasonable payments toward the support of the child. . . .

Tenn. Code Ann. § 36-1-102(1)(A)(I)(Supp. 1994).

Appellee points out that appellant incorrectly relies upon the standard for willfulness which was applied in *In re Satterwhite,* 2001 WL 3877389 (Tenn. Ct. App. Apr. 17, 2001) and *Koivu v. Irwin,* 721 S.W.2d 803, 807 (Tenn. Ct. App. 1986). In those cases, abandonment is construed as "conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. . . a conscious disregard or indifference to the parental obligations. . ." This standard is inapplicable to this case, inasmuch as only in cases accompanied by an adoption petition or involving adoption proceedings must one prove a "settled purpose to forego all parental duties" and/or "conscious disregard or indifference to the parental obligations." This Section of our Court recently acknowledged *Swanson's* return to the 1994 standard, which distinguished between adoption and non-adoption cases:

> Having found the statutory definition of "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support" to be unconstitutional, the Supreme Court held that "the definition that was in effect under prior law shall be applied." [citation omitted] In a footnote, the Supreme Court stated that "[w]e wish to make it clear that the definition previously in effect was the definition as it existed in 1994." Id. at 189, n. 14.
>
> In 1994, there were different standards of "abandonment" depending upon whether the case was a proceeding to terminate parental rights unaccompanied by an adoption request or was an adoption proceeding. The Supreme Court in Swanson articulated the 1994 standard applicable to adoption cases--the standard that is once again in effect following the holding in Swanson: . . .

*C.D.C. v. C.E.D.* WL 869942, *5 -6 (Tenn.Ct.App.,2002).

In *State v. C.H.H.,* 2002 WL 1021668 at \*7 (Tenn. Ct. App. May 21, 2002), a parent argued that termination of his parental rights was unconstitutional because the lower court made no finding that his failure to pay support was intentional, given that he had made some voluntary payments. This Court examined the language of the Final Decree, which read in relevant part: "(2)Father abandoned the Child by willfully failing to support or make reasonable payments toward the support of the Child for the 4 consecutive months preceding the filing of DCS' Petition to Terminate Parental Rights. *See* Tenn. Code Ann. §§ 36-1-113(g)(1); 36-1-102(1)(A)." *Id.* This Court affirmed the Trial Court, because the language tracked the constitutionally-permissible definition of "willful failure to support" found in the 1994 statute. The operative language used by the Trial Court in *C.H.H.* is remarkably similar to the language set forth in the Order of this case:

> ". . .that for four (4) months and longer preceding [his incarceration], Ronnie Blevins has willfully failed to support or make reasonable payments toward the support of the child. The evidence shows that the last support provided by Ronnie Blevins was on or about August 8, 1999. This evidence and testimony was uncontroverted by Ronnie Blevins. The Court finds the stat's proof to be clear and convincing that Ronnie Blevins has willfully abandoned the child, Ronnie Blevins, Jr., as defined in Tenn. Code Ann. § 36-1-102(1)(A)(iv)."

Based upon the evidence, the Trial Court did not err in finding that appellant had abandoned the child by willful failure to pay child support.[2]

For the foregoing reasons, we affirm the Judgment terminating the parental rights of appellant, and remand with the cost of the appeal assessed to the appellant, RB.

_____
HERSCHEL PICKENS FRANKS, J.

---

[2]Appellant claims there is no proof he received the Court Order with the child support obligation, while conceding that he knew he owed support but was waiting for the Court to contact him by letter. He also testified that it was difficult for him to get to the courthouse. We have previously rejected these arguments. *See, e.g., In re Hoover-Crawford,* 2001 WL 846044 at \*7 (Tenn. Ct. App. July 27, 2001). *Also see, State v. TK*, 2002 WL 1115730 at 5 (May 30, 2002).